UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GERGANA FRANCO,**

      **Plaintiff,**

  v.

**BRNV, INC., et al.,**

      **Defendants.**

Case No. 1:23-cv-812

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Gergana Franco's father, Metodi Panev, tragically died in a motor vehicle accident on I-75 in Ohio. The two individual Defendants in this action, Aleksandr Kozhukhar and Yuriy Bobrov, were in a Dodge Ram pickup hauling two pickups on a trailer behind them when they ran out of gas, coming to stop in the middle of the roadway. Panev collided with the stationary trailer, resulting in his death.

Franco (as executor of her father's estate) brings this suit against a host of Defendants—Kozhukhar and Bobrov, of course, but also various other entities that were apparently connected, either directly or indirectly, with the motor-vehicle transport activity. (Am. Compl., Doc. 15). As to each of the business-entity Defendants, she asserts four types of claims: vicarious liability, negligent retention, joint venture liability, and wrongful death. All seek to impose liability for the role these entities allegedly played in placing Kozhukar and Bobrov behind the wheel.

One of those business-entity Defendants, Jack Cooper Transport, now moves for judgment on the pleadings on the four claims Franco asserts against it: vicarious

liability (Count 12), negligent retention (Count 13), joint venture liability (Count 14), and wrongful death (Count 16). In support of its motion, Jack Cooper presses two basic arguments: (1) Franco has failed to plead sufficient facts to render the claims against it plausible; and (2) to the extent she has pleaded sufficient facts, the Federal Aviation Administration Authorization Act of 1994 (FAAAA) preempts her claims. (Doc. 31, #273).

For the reasons that follow, the Court **GRANTS IN PART** (as to Counts 12 and 14) and **DENIES IN PART** (as to Counts 13 and 16) Jack Cooper's motion (Doc. 31).

## BACKGROUND[1]

**A.     The Accident.**

At approximately 9:30 p.m. on February 25, 2023, Kozhukhar and Bobrov were traveling southbound on I-75 just south of Dayton, Ohio, in a Dodge Ram 3500 pickup. (Doc. 15, #172). Kozhukhar was driving, and Bobrov was his passenger. (*Id.*). They were towing a trailer carrying two 2023 Chevrolet Silverado 2500 pickups. (*Id.*).

The Dodge pickup's sensors had been alerting Kozhukhar and Bobrov that the vehicle was low on fuel for approximately fifty miles. (*Id.* at #173). But the two men ignored the warnings. (*Id.*). Despite passing multiple exits with gas stations, the truck ultimately ran out of fuel, causing it to coast to a stop in the "middle of the lane of travel on I-75." (*Id.*). Bobrov exited the vehicle to place warning triangles on the

---

[1] Because this matter is before the Court on a motion for judgment on the pleadings, the Court accepts the facts alleged in the Amended Complaint as true for purposes of resolving this motion. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007). But the Court reminds the reader that they are just that—allegations.

roadway, but did so in an improper fashion, which meant that they failed to adequately warn approaching motorists. (*Id.* at #174).

Panev, unfortunately, fell prey to that inadequate warning. He was traveling southbound on I-75 in a Mercedes Sprinter van and didn't notice the stopped trailer in time to brake and struck it from behind, which proved fatal. (*Id.* at #172). Even though Panev still had a pulse when troopers responded to the scene, he ultimately died from the grievous injuries he suffered. (*Id.* at #170, 174). These included blunt impact injuries to his torso, such as a lacerated aorta and damage to his lungs, as well as trauma to his right leg, including a displaced fracture of his femur. (*Id.* at #174).

The Amended Complaint suggests that the accident resulted, at least in part, from Kozhukhar's and Bobrov's inability to understand the English language. (*Id.* at #173). As a result, they allegedly could not read highway traffic signs, and could not understand the "signs, signals, alarms and/or warnings" that their truck generated concerning its low fuel. (*See id.*). Based on all that, Franco kicks off her Amended Complaint by asserting a claim against Kozhukhar and Bobrov for their alleged negligence. (*Id.* at #172–74 (Count 1)).

**B.    The Claims Against Business Entities.**

But Franco doesn't stop with Kozhukhar and Bobrov. As noted, she goes on to press claims against various business entities that were allegedly associated with the towing activity, although the Amended Complaint does not always make clear what that association is. As to each such entity, it begins by asserting a claim for vicarious

3

liability and a claim for negligent retention, seeking to make the entity liable for Kozhukar's and Bobrov's conduct, either on grounds that they are employees or agents (vicarious liability) or that the entity was negligent in putting them behind the wheel (negligent retention). (*Id.* at #175–83). So, the Court starts by describing those claims as to each Defendant.

Start with Sugs Transportation, which allegedly is the "registered owner of USDOT number 3961786 [which was] displayed on the Dodge pulling the Trailer." (*Id.* at #175). In the vicarious liability count against Sugs, Franco asserts, without any further supporting facts, that Kozhukhar and Bobrov were "employees, agents and/or servants" of Sugs. (*Id.* (Count 2)). Then, in the negligent retention count, she claims that Sugs violated its duty to act reasonably in hiring drivers, and to "promulgate and enforce" policies ensuring that its drivers drove safely. (*Id.* at #175–76 (Count 3)).

Turn to Hooks Transportation. Franco does not allege what role Hooks Transportation actually played in the transport at issue, but she largely repeats the same pattern she used with Sugs. First, in Count Four, Franco claims that Bobrov and Kozhukar were "employees, agents and/or servants" of Hooks. (*Id.* at #177). Then, in Count Five, she alleges that Hooks breached its duties (1) to act reasonably in retaining drivers, and (2) to promulgate policies to ensure its drivers acted safely. (*Id.* at #177–78).

Next up is Apis Logistics. As to Apis, Franco alleges that "at all relevant times, Defendant Apis was an interstate motor carrier." (*Id.* at #178). Interestingly, she

4

provides no facts that support this conclusion. But, in any event, the Amended Complaint once again claims that Kozhukhar and Bobrov were Apis's "employees, agents and/or servants," and that Apis is thus vicariously liable for their conduct. (*Id.* (Count 6)). Although here Franco adds an allegation that, due to Apis being an interstate motor carrier, it is responsible for their acts "[r]egardless of the employment or agency relationship." (*Id.*). She then goes on to again allege that Apis was negligent in retaining them as drivers and failed to promulgate safety rules. (*Id.* at #178–79 (Count 7)).

The pattern largely repeats with BRNV, Inc., although with a couple of interesting twists. First, Franco alleges that BRNV owned the Dodge pickup that was towing the trailer. (*Id.* at #180). And then, in the vicarious liability claim (Count 8) apparently in an attempt to cover her bases, Franco alleges (once again with no factual support) that BRNV allowed the Dodge to be operated "by Defendants Kozhukhar and/or Bobrov and/or Sugs and/or Hooks and/or Apis and/or Jack Cooper." (*Id.*). The negligence claim also has a twist. In addition to negligent *retention* of drivers, Franco also asserts that BRNV negligently *entrusted* the vehicle, but only to Kozhukhar, Bobrov, Sugs or Hooks, leaving Apis and Jack Cooper out for some reason. (*Id.* at #180–81 (Count 9)).

Counts Ten and Eleven are directed against Lizaveta Transport Corp. (*Id.* at #181–82). Franco alleges that Lizaveta owned the trailer, giving rise to vicarious liability for the use of the trailer, and again identifying that user broadly as "Kozhukhar, and/or Bobrow, and/or Sugs and/or Hooks and/or Apis and/or Jack

5

Cooper." (*Id.* at #181 (Count 10)). Then, Count Eleven alleges negligent retention or entrustment, but unlike as to BRNV, this time the count includes all of the other Defendants in the list of folks for which Lizaveta is responsible. (*Id.* at #181–82).

Finally, in the claims most relevant here, Franco trains her sights on Jack Cooper. In Count Twelve, she asserts both that (1) all the other Defendants, both individual and business entities, were "the employees, agents and/or servants for Defendant Jack Cooper," and that (2) "Jack Cooper was an interstate motor carrier for the subject load" and is thus vicariously liable "regardless of the employment or agency relationship." (*Id.* at #182). Count Thirteen then says that a brief search of U.S. Department of Transportation records would have shown that Kozhukhar, Sugs, Hooks and/or Apis had "a lengthy history of violations," and that it was thus negligent for Jack Cooper (1) to hire any of the Defendants (including BRNV or Lizaveta, whom the Amended Complaint does not contend had a lengthy history of violations), and (2) to fail to promulgate and enforce policies ensuring safety. (*Id.* at #182–83).

Beyond that, Franco asserts two causes of action against the Defendants as a group—Counts Fourteen and Sixteen (the Amended Complaint skips Count Fifteen). (*Id.* at #183–84) In the first, Franco alleges, with no additional supporting facts, that all the Defendants were engaged in a joint venture to transport the two Chevrolet pickups. (*Id.*). Then, in the second, she asserts a claim under Ohio's wrongful death statute, O.R.C. § 2125.01, et seq. (*Id.* at #184).

6

**C.     Jack Cooper's Answer and Motion for Judgment on the Pleadings.**

Jack Cooper responded in two ways. First, it answered. (Doc. 30). There it admitted it acted as a broker in connection with transporting the two Chevrolet pickup trucks at issue. (*Id.* at #246). It also appended the contract between it and Apis pursuant to which it claims it arranged for Apis to undertake the transportation at issue. (Doc. 30-1).

Jack Cooper also moved for judgment on the pleadings. (Doc. 31). The motion makes two basic arguments. First, it claims that Franco has failed to allege facts giving rise to a plausible inference that Jack Cooper is liable under any of the four counts directed against it (Counts 12, 13, 14, and 16). (*Id.* at #281–83). And it adds that even if Franco has plausibly alleged one or more of those state law claims, the FAAAA preempts them as applied to Jack Cooper on the alleged facts here. (*Id.* at #284–87).

Franco responded, (Doc. 38), and Jack Cooper replied, (Doc. 39). So, the motion is ripe for review.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). When reviewing such motions, the Court applies the same standard as it would apply to a motion to dismiss under Rule 12(b)(6). *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017). That means the Court takes "all well-pleaded material allegations of the pleadings of the opposing party" as true, and grants the motion "only if the moving party is nevertheless clearly

7

entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (cleaned up). However, the court need not accept as true bare legal conclusions or unwarranted factual inferences. *Id.* at 581–82.

To withstand a motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336–37 (6th Cir. 2007). And the factual allegations must both "give notice to the defendant as to what claims are alleged" and "plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## LAW AND ANALYSIS

The Amended Complaint asserts four claims against Jack Cooper. Jack Cooper now offers two arguments in rebuttal: first, that the Amended Complaint fails to meet its burden of alleging facts that make those claims plausible, and second, that the FAAAA preempts the claims. The Court addresses each argument in turn.

**A.     The Amended Complaint Fails to Plausibly Allege Vicarious Liability (Count 12) and Joint Venture Liability (Count 14).**

When it comes to Jack Cooper, the Amended Complaint is long on bare legal conclusions (which the Court must ignore) and remarkably short on facts. Indeed, the Amended Complaint itself provides *no facts* as to the role that Jack Cooper played in

8

the transportation at issue. Rather, it was only when Jack Cooper answered that the Court learned Jack Cooper apparently had arranged transportation for the Chevrolet pickups at issue through a contract with Apis. Absent that admission, it was frankly unclear that Jack Cooper had any relationship to these events *at all*. The Court appreciates the difficulties that a plaintiff may face in finding facts pre-filing, but the *Iqbal/Twombly* pleading standard imposes some obligations in that regard. And Franco falls short of clearing the threshold here as to two of the four claims.

Start with Count Twelve, which asserts vicarious liability on two theories—that Jack Cooper employed one or more of the other Defendants, or that Jack Cooper was liable for them as the "interstate motor carrier for the subject load." (Doc. 15, #182). Neither theory clears the plausibility threshold. As to the first, the Amended Complaint baldly asserts that Jack Cooper employed (or had as agents) all the other Defendants, while simultaneously (and contradictorily) asserting that many of the other business entity Defendants employed (or had as an agent) Jack Cooper. That doesn't cut it. To allege every imaginable possibility is to dilute the plausibility of each and provide meaningful notice of none. True, Jack Cooper has now supplied a contract (the Transportation Agreement) it had with one other Defendant (Apis), and it admits that it brokered the transportation of the Chevrolet pickups.[2] (Doc. 30,

---

[2] For the purposes of the present motion, the Court can properly consider the Transportation Agreement as part of the pleadings. *See* Fed. R. Civ. P. 10(c); *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999) ("[A] document that is not formally incorporated by reference or attached to a complaint may still be considered part of the pleadings … when [the document] is central to the plaintiff's claim" (quotation omitted)). And here the contractual arrangement between Jack Cooper and Apis seems to fit the bill. Perhaps if Franco were to contend the contract were not valid, or otherwise objected to its use, the Court may see things differently. But far from objecting to the Court's consideration of the

#246–47; Doc. 30-1). But that contract certainly does not suffice to turn Jack Cooper into Apis's (or anyone else's) employer as to the events here. In short, there are no facts alleged (or admitted) giving rise to a plausible inference of liability on an employer theory.

As for the second theory, Franco again fails to allege any *facts* plausibly suggesting that Jack Cooper was acting as the interstate motor carrier *for the shipment at issue*. And again, the document Jack Cooper has provided suggests it was not. Specifically, the contract with Apis provides that Jack Cooper acted as a broker, not a motor carrier. (*See* Doc. 30-1). If the Court considers the Transportation Agreement as part of the pleadings, then Franco's claim for vicarious liability is rebutted to the extent that it depends on Jack Cooper's status as a motor carrier. If, on the other hand, the Court does *not* consider the Transportation Agreement, that leaves the Court with *no* facts about Jack Cooper's role. Either way, the claim does not meet the plausibility threshold.

Franco says not so fast. She asks the Court to take judicial notice of Jack Cooper's website, which proclaims that Jack Cooper provides interstate motor carrier services. (Doc. 38, #316–17). Two problems with that. First, it is not clear that the Court can take judicial notice of private websites. But even if it could, that Jack Cooper *sometimes* acts as a motor carrier does not mean that it assumed that role here. And Franco alleges no facts suggesting it did. Separately, Franco points to a

---

Transportation Agreement, her response to Jack Cooper's motion relies extensively on it. (*See* Resp., Doc. 38, #321 ("[The Transportation Agreement] contains a wealth of information about Jack Cooper's role here.")).

10

U.S. Department of Transportation website suggesting that, at one point in the past, the agency may have suspended Jack Cooper's ability to act as a broker. (Doc. 48, #410).³ From that, she would have the Court determine that Jack Cooper must have been the motor carrier services provider (as it could not have been the broker). But the very form that Franco supplied shows that Jack Cooper's broker authorization was reinstituted on November 5, 2020, years in advance of the accident here. (*See id.* at #412). So, that does not help Franco.

In sum, the Amended Complaint alleges no facts that would plausibly render Jack Cooper liable on a vicarious liability theory. The Court therefore dismisses Count Twelve.

Now turn to Count Fourteen, which the Amended Complaint labels "Joint Venture and Liability." Under Ohio law, to succeed on this claim, Franco ultimately would need to prove "four elements: (1) a joint contract, either express or implied, to engage in a specific business enterprise; (2) an intention to associate as joint venturers; (3) a community of interest and joint control; and (4) an agreement to share jointly and severally in profits and losses." *Howard, Adm'r of the Est. of Sean David Howard, Sr. v. Szoda*, 224 N.E.3d 1259, 1262 (Ohio Ct. App. 2023) (citing *Ford v. McCue*, 127 N.E.2d 209 (1955)). And recall that Franco claims that the joint venture included *all* the Defendants. (Doc. 15, #182). But she offers no facts even suggesting that any of the four elements set forth above are present here. True, Jack Cooper supplied a contract. But it was only with Apis, so that is by no means suggestive of a

---

³ After Franco responded in opposition to Jack Cooper's motion, she moved to supplement her response. (Doc. 48). The Court **GRANTS** that motion.

11

joint venture that included all the other entities. In any event, a contract, in and of itself, does not make a joint venture—it is, after all, but one of four elements. *See Howard*, 224 N.E.3d 1259, 1262–63. And here there are no facts, from anyone, suggesting that the three remaining elements are met. So, the Court must dismiss Count Fourteen against Jack Cooper, as well.

In sum, the Court **DISMISSES** Counts Twelve and Fourteen for failure to state a claim. Because Plaintiff may be able to supply additional facts, though, that are responsive to the concerns the Court raised, the Court dismisses these counts **WITHOUT PREJUDICE**.

B. **The FAAAA does not Preempt Count Thirteen.**

Next consider Count Thirteen, in which Cooper asserts common-law negligence. As to that count, the first question before the Court is whether that claim falls within the FAAAA's express preemption provision. If so, a second question arises: are the claims saved by the so-called "safety exception," which carves out certain state safety regulations from preemption?

Two clauses in the FAAAA provide the genesis for these questions. The first, which is an express preemption provision, reads, in full:

> **(c) Motor carriers of property.**—
>
> **(1) General rule**.—Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

12

49 U.S.C. § 14501. The second clause, which the statutory provision immediately above refers to as "paragraph (2)," and which this Opinion refers to as the safety exception, states as follows:

> **(2) Matters not covered.**—Paragraph (1)—
>
> **(A)** shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

*Id.* Much of the current dispute centers on (1) the degree to which "with respect to the transportation of property" in the first paragraph above limits the scope of the preemption clause, and (2) the degree to which "with respect to motor vehicles" in the second paragraph above limits the scope of the safety exception.

Fortunately, while this motion was pending, the Sixth Circuit decisively answered both questions. In *Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847 (6th Cir. 2025), the plaintiff sought to hold the defendant-broker liable "for negligently hiring an unsafe motor carrier," *id.* at 852, a theory of liability that is essentially identical to the claim Franco raises in Count Thirteen of the Amended Complaint, (Doc. 15, #182). The district court in *Cox* had found that the FAAAA preempted the claims, and that the safety exception did not save it. *Cox*, 142 F.4th at 850. But on appeal, while the Sixth Circuit affirmed the lower court's finding that the claims fell within the preemption provision, it reversed that court's conclusion as to the safety exception. *Id.* at 853, 858.

13

In *Cox*, as here, the narrower question—and "the source of the current circuit split,"[4] *id.* at 854—was whether a broker's (allegedly negligent) hiring function is "with respect to motor vehicles," and thus excluded from the scope of the preemption provision by operation of the safety exception. 49 U.S.C. § 14501(c)(2)(A). The Sixth Circuit answered the question in the affirmative, reasoning:

> The crux of the alleged negligent conduct is that TQL [as the broker] failed to exercise reasonable care in selecting a safe motor carrier to operate a motor vehicle on the highway, resulting in a vehicular accident that killed Ms. Cox—allegations that plainly "involve" motor vehicles and motor vehicle safety. *Dan's City*, 569 U.S. at 262, 133 S.Ct. 1769. Indeed, the safety violations that TQL allegedly ignored pertain directly to motor vehicles. A core purpose of FMCSA's Safety Measurement System, after all, is to discern and report "crash risk." *Flat Creek Transp., LLC v. Fed. Motor Carrier Safety Admin.*, 923 F.3d 1295, 1297 (11th Cir. 2019) (quoting 81 Fed. Reg. 11875–11876 Table 2 (Mar. 7, 2016)). Golden Transit's track record of unsafe motor vehicle operation, and TQL's alleged disregard for that public track record, constitute the basis of the negligent hiring claim. Simply put, there is no way to disentangle motor vehicles from Mr. Cox's substantive claim.
>
> To address this alleged negligence, Mr. Cox's claim seeks to enforce a common law requirement that brokers exercise reasonable care in selecting a safe motor carrier to transport goods by motor vehicle. This requirement would necessarily constitute an exercise of a state's regulatory authority "with respect to," or concerning, "motor vehicles." *See* 49 U.S.C. § 14501(c)(2)(A); *Dan's City*, 569 U.S. at 259, 133 S.Ct. 1769.

---

[4] *See, e.g.*, *Aspen American Insurance Company v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1272 (11th Cir. 2023) (holding that the FAAAA preempted a negligence claim against a broker, notwithstanding the safety exception); *but see Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1031 (9th Cir. 2020) (holding FAAAA preemption applied to a negligence claim against a broker but that the safety exception saved the claim).

14

*Cox*, 142 F.4th at 856. The opinion further considered—and rejected—the defendant broker's argument that its relation to motor vehicles was "too attenuated" to fall within the safety exception. *Id.* at 857.

Here, for purposes of the preemption analysis, Franco's allegations against Jack Cooper are indistinguishable from those in *Cox*. Franco avers that "[a] brief search of the U.S. Department of Transportation Federal Motor Carrier Safety Administration Safety and Fitness Electronic Records System would have revealed to Defendant Jack Cooper a lengthy history of violations for Defendants Kozhukhar, and/or Bobrov, and/or Sugs, and/or Hooks and/or Apis." (Doc. 15, # 182–83). As such, this claim contains more factual substance as to Jack Cooper's role than Counts Twelve and Fourteen, addressed above. And in light of *Cox*'s apparent recognition of "a common law requirement that brokers exercise reasonable care in selecting a safe motor carrier," 142 F.4th at 856, the safety exception saves Franco's negligence claim against Jack Cooper from FAAA preemption. In short, then, Franco has sufficiently pleaded her negligence claim against Jack Cooper under Count Thirteen.

With this conclusion, the Court also declines to dismiss Count Sixteen, which raises a claim for wrongful death. Jack Cooper's sole argument for dismissing that claim rested on its belief that the other three claims against it were not viable and thus could not provide a predicate tort to support a wrongful death claim. (Doc. 31, #287). But because the Court finds that the negligent hiring claim will proceed, that argument necessarily fails.[5]

---

[5] As with Counts Twelve (vicarious liability) and Fourteen (joint venture liability), Jack Cooper also argues that the wrongful death claim under Count Sixteen is inadequately

## CONCLUSION

Two of Franco's four claims against Jack Cooper—Counts Twelve and Fourteen—fail on plausibility grounds. In light of the Sixth Circuit's recent decision in *Cox v. Total Quality Logistics, Inc.*, 142 F.4th 847 (6th Cir. 2025), Franco's claim for negligent hiring, and thus her derivative claim for wrongful death, both survive Jack Cooper's motion. Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Jack Cooper's motion for judgment on the pleadings (Doc. 31). Given that determination, the Court **DENIES AS MOOT** Jack Cooper's motion to stay discovery pending disposition of its motion for judgment on the pleadings (Doc. 46).

**SO ORDERED**.

August 6, 2025
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

---

pleaded and lacking factual support. (Doc. 31, #281–83). But vicarious liability and joint venture liability each depend on the establishment of certain relationships among the relevant parties, a showing that Franco falls well short of in pleading those claims, as the Court explained above. On the other hand, and in light of *Cox*, the facts alleged under Count Thirteen (negligent hiring) supply a sufficient (if admittedly minimal) factual basis for the wrongful death claim to survive Jack Cooper's motion.